ENNIS *vs.* PENTZ.

*In the matter of the Estate of* THOMAS F. THOMPSON, *deceased.*

THE testator gave his residuary estate to "the two nearest female relatives or connections" of his deceased mother, provided they furnished satisfactory proof of their identity and right of inheritance within two years after his executors had given public notice by advertisement, and in default of application for the bequest, the residue was given over to the Astor Library, in the City of New York: *Held*, that the legacy vested on his decease, and that the provisions relative to advertisement did not suspend the vesting, but related only to the time and manner of proving the claim of the legatees.

As between two nieces of his deceased mother, the wife of a grand nephew, and three great grand nieces, *Held*, that the two nieces answering the description were entitled to take, notwithstanding one of them, though surviving the testator, died before the time for distribution had arrived.

A provision that if any legatee shall die before the executors shall have forwarded in good faith the legacy, the legacy shall be void, is valid in law. Such a provision will not be applied to a residuary bequest, unless the intention be very plainly and explicitly expressed.

The term "relatives" applies ordinarily to persons in the line of consanguinity, and not to those connected by marriage. Where the gift is to relatives, resort must be had to the statute of distributions to determine who are entitled; but when the testator specifies a certain number of the "nearest" relatives, the description will be applied independently of the statute.

Where the gift is to "relatives *or* connections," substitution may be intended, but connections by affinity will not take, until the class of relatives by blood is first exhausted.

F. F. MARBURY, *for Claimants.*

W. C. FREEMAN, *for Executors.*

THE SURROGATE.—The testator gave the residue of his estate unto "the two nearest female relatives or connections" of his deceased mother, adding, "that is to say, I make the said relatives my residuary legatees, provided, and the said bequest is upon the express condition, that said relatives or connections shall furnish my executors satisfactory proof of their identity and right of inheritance within two years after

my executors shall have given public notice semi-weekly for the space of three months, in one of the leading newspapers of the City of Dublin, of this clause of my will." In default of application for the bequest after due publication, this clause is declared "null and void" and the residue is given over to the Astor Library, in the City of New York. It appears that at the time of the testator's death, the nearest female relatives and connections of his mother were Mary Prothero and Frances Beaghan, nieces of his mother, and Mrs. Ennis, the wife of a grand-nephew. Since the testator's death, three great grand-nieces have been born. Who, under these circumstances, are the residuary legatees indicated by the will? In the first place I see nothing in this will taking the residuary bequest out of the usual rule that, unless otherwise specified, all legacies vest instanter at the testator's death. The testator says expressly, "I will and bequeath" all the rest of my estate "unto the two nearest female relatives or connections of my mother." There is no postponement *in futuro*, but he speaks in the present tense, and the moment the will began to operate, this bequest had its existence and the legatees became entitled. But he makes this still more clear by subsequent words, declaring, "I make the said relatives my residuary legatees." This is followed by a proviso and condition, that they shall furnish the executors with "satisfactory proof of their identity and right of inheritance" within two years after public notice in the Dublin papers—but the condition is not intended to alter or enlarge the terms of the previous bequest, but to establish "the identity," of the parties entitled, and to justify the executors, in default of receiving any claims under the residuary clause, to pay over the surplus to the Astor Library. There is not a word in the will to show the testator intended any other relatives should take the residue, except those living at his own decease, and the usual rule of law cannot, therefore, be disturbed. Again: it appears that Frances Beaghan, one of the nieces of the testator's mother, has died since the decease of the testator. In the portion of the will which precedes the

disposition of the residuary estate, there is a clause to the following effect. "If any legatee should die before my executors shall have forwarded in good faith any said legacy, any such said legacy shall be null and void, unless otherwise herein specified." This provision I take to be valid in law, (*Elwin* vs. *Elwin.*, 8 *Vesey*, 547 ; *Law* vs. *Thompson*, 4 *Rus.*, *Ch. R.*, 92.) But it is to be observed that this clause follows a long series of bequests to different legatees named, and precedes a number of bequests to public institutions, as well as the residuary disposition ; and its most natural reference, therefore, is to the class of legacies which it immediately succeeds, the words " any said legacy" in view of the relative situation of the paragraphs, meaning " any aforesaid legacy." Besides, there is a special provision attached to the residuary clause, declaring that it shall be " null and void," in case no claim is made within two years after advertisement by the executors ; and nothing being said as to the effect of the decease of the residuary legatees before receiving the estate, the reasonable implication is that all the terms upon which the bequest was to become void were there stated. In any event, the death of one of the residuary legatees would not let in other persons to the benefit of the share, who, at the testator's decease, did not come within the description of the " two nearest female relatives ;" but either the other residuary legatee would take as a joint tenant, or the whole legacy would be " null and void," or there would be a lapse. Any one of these results will not be declared unless the intent be very clear ; the ordinary rule in favor of vesting all interests on the testator's death, being disturbed only when the intention to that effect is expressed with certainty on the face of the will.

If, then, we must take the will as speaking at the time of the testator's death, and as vesting the residue in the persons at that time coming within the description of the residuary clause, the great grand-nieces will necessarily be excluded, as not being in existence at that time. Nor do I think that the wife of the grand-nephew is entitled under the descrip-

tion. The term relatives applies ordinarily to persons in the line of consanguinity and not to those connected by marriage. Where the gift is merely to " relatives," it becomes necessary to resort to the statute of distributions in order to determine who shall take; but in the present instance the statute will not apply, because the testator himself designated the two nearest female relatives or connections of his deceased mother as the objects of his bounty. In *Davies* vs. *Baily*, 1 *Ves. Sen.*, 84, Lord Hardwicke said, " Relation is a very general word, and takes in any kind of connection, but the most common use of it is to express some sort of kindred, either by blood or affinity, though properly by blood." In *Maitland* vs. *Adair*, 3 *Vesey*, 231, Lord Thurlow expressed the opinion " that where a person gives among his relations, those by affinity are not included." In *Worseley* vs. *Johnson*, 3 *Atkyn*, 758, it was held that a wife is not a relative—that word means of consanguinity—not *affinis*, but *consanguineus*. In *Harvey* vs. *Harvey*, 5 *Beavan*, 134, it was decided that the widow of a deceased brother did not come within the terms of a power to appropriate for the benefit of " relations."

The word " connections" used in the bequest now under consideration may have a larger signification than "relatives," and though the words " right of inheritance," contained in the residuary clause, look towards a relation by blood, yet it may have been the testator's intention when giving to "relatives *or* connections," to include connections by marriage in default of there being any relations by consanguinity. The word *or* in the clause may have been designed to effect a substitution of " connections" to the benefit of the bequest, in case there were no " relatives." It is not, however, important to dwell upon that point, for the reason that if we take the testator as intending by the description to include all the female relations and connections by blood or affinity of his deceased mother, still upon inquiry who were " the two nearest," the two nieces of his mother living at his death, exactly answer the designation, and the result excludes the wife of a grandnephew. The term " nearest" means nearest in degree—

counting from the specified stock. A gift, for example, " to nearest relations," would enure to the benefit of brothers and sisters, to the exclusion of nephews and nieces. (*Smith* vs. *Campbell*, 19 *Vesey*, 400 ; 12 *Vesey*, 433 ; 1 *Cox*, 234.) There must be a decree, therefore, declaring Mary Prothero and Frances Beaghan, the nieces of the testator's mother, to have been entitled to the residuary estate on the testator's decease. Frances Beaghan having since died, her share must pass through the usual course of administration.