## JONES *v.* HUNT.

### (*Nashville.* March 17, 1896.)

1. WILLS. *Estate vests as of date of will.*

   The devisees take equal, several, vested, and transmissible interests, as of date of the will, under a devise made to the children of testator's deceased brothers and sisters, who "now reside in Louisiana," "to be equally divided between them, share and share alike," it being the expressed intention of the testator "to give each one of said children an equal portion." (*Post, pp. 370–377.*)

   Code construed: § 3035 (M. & V.). § 2195 (T. &. S.).

   Cases cited and approved: Nichols *v.* Allen, 87 Tenn., 131; Perry *v.* High, 3 Head, 350; Cochreham *v.* Kirkpatrick, 1 Heis., 327; Sharpe *v.* Allen, 5 Lea, 81; Reeves *v.* Reeves, 5 Lea, 655; Dixon *v.* Cooper, 88 Tenn., 177; Darden *v.* Harrill, 10 Lea, 422; Hottell *v.* Browder, 13 Lea, 677; Thompson *v.* Gaut, 14 Lea, 313; Fraker *v.* Fraker, 6 Bax., 352.

2. SAME. *Devisees taken per capita.*

   And under such testamentary provision the devisees take *per capita*, not *per stirpes.* (*Post, pp. 371, 375, 376.*)

3. SAME. *Rules of construction.*

   The Court states and applies several rules for the construction of wills in this opinion. (*Post, pp. 371–377.*)

---

### FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County.

J. C. BRADFORD, Sp. Ch.

24—12 P

Jones v. Hunt.

C. D. BERRY, for Complainant.

STOKES & STOKES and BARTHELL & KEEBLE for Defendants.

CALDWELL, J. On the — day of December, 1893, Lucinda Bedford died testate, at her residence in Davidson County, Tennessee. Her will was dated and executed July 16, 1888. The executor filed the bill in this cause for a construction of "Item Eleventh," which is as follows: "After payment by my executor of my debts and the legacies before mentioned, I will, devise, and bequeath all the rest and residue of my estate, including gas stock, money in bank, and bonds, to the children of my deceased sisters, Kitty Hunt and Margaret Robertson, and the children of my deceased brothers, Rob Roy Dyer and George Dyer, to be divided equally between them, share and share alike, it being my intention to give to each one of said children an equal portion of said residue. Said children now reside in Louisiana." The Chancellor adjudged:

"1. That it was the intention of the testatrix, under the aforesaid eleventh clause of her will, to give the residue of her estate to a designated class— namely, the children of her deceased brothers and sisters living at the time of her death—to the exclusion of the descendants of any one or more of the class who might have died previous to the death of the testatrix, but including any one or more of the class who might have died since the death of

the testatrix; and should this be the case, the share of such deceased person, who died since the death of the testatrix, will go to his or her representative; that under said clause in said will only those children living at the time of the death of the testatrix are entitled to share in the property therein devised.

"2. That the children of Kitty Hunt, Margaret Robertson, Rob Roy Dyer, and George Dyer take each an equal share in said bequest. In other words, said children do not take *per stirpes*, but *per capita*, and each child of any one of said brothers and sisters takes an equal share or interest with the children of the other brothers and sisters."

The Court of Chancery Appeals affirmed the decree of the Chancellor.

Grandchildren of Kitty Hunt and of George Dyer, whose parents (children of said Kitty Hunt and George Dyer) died between the date of the will and the death of the testatrix, have appealed.

A will takes effect from the death of the testator, (Code (M. & V.), § 3035; *Nichols* v. *Allen,* 87 Tenn., 131; *Perry* v. *High,* 3 Head, 350; *Cochreham* v. *Kirkpatrick,* 1 Heis., 327; *Sharpe* v. *Allen,* 5 Lea, 81; *Reeves* v. *Reeves, Ib.,* 655; Prichard on Wills and Ad., Secs. 26 and 28; 1 Jarman on Wills, by R. & T., 602), and its provisions should be construed as relating to conditions and persons then existing, unless a different purpose be declared or clearly indicated by the will itself. If a different purpose be disclosed, and it appear that the testator.

intended the objects of his bounty to be reckoned from the execution of the will, that purpose and intention will be controlling in ascertaining who those objects were.    1 Roper on Legacies, Sec. 30; 1 Jarman, 591; Redfield on Wills, 370–380; *Sharpe* v. *Allen*, 5 Lea, 81; *Morse* v. *Mason*, 11 Allen, 36.

Indeed, the true intention of the testator is always the first and paramount matter of inquiry in the construction of every will; and when that intention, whatever it may be, is ascertained, it must prevail, unless contravened by some rule of law or is contrary to sound public policy.    *Smith* v. *Bell*, 6 Peters, 75 ; *Colton* v. *Colton*, 127 U. S., 309, 310 ; *Hottell* v. *Browder*, 13 Lea, 677 ; *Thompson* v. *Gaut*, 14 Lea, 313 ; *Fraker* v. *Fraker*, 6 Bax., 352 ; 3 Milliken's Meigs' Dig., Sec. 2740, Subsecs. 1 and 2 ; 4 Kent, *535 and *557 ; 2 Story's Eq. (10th Ed.), Sec. 1074*f*; Pritchard, Sec. 384.

The last author, in the section just cited, quotes the following unique language from Swinburne, namely : "It is written that the will or meaning of the testator is the queen or empress of the testament, because the will doth rule and govern the testament, enlarge and restrain it, and in every respect moderate the same, and, indeed, is the very efficient cause thereof.    The will, therefore, and meaning of the testator ought, before all things, to be sought for diligently, and, being found, ought to be observed faithfully."

Another general and important rule is that, "in

construing a will, the words and expressions used are to be taken in their ordinary, proper, and grammatical sense, unless in so reading them in connection with the entire will, or upon applying them to the facts of the case, an ambiguity or difficulty of construction arises, in which case the primary meaning of the words may be modified, extended, or abridged in accordance with the presumed intention, so far as to remove or avoid the difficulty or ambiguity in question, but no further.'' Pritchard, Sec. 392; *Smith* v. *Bell*, 6 Pet., 68; *Colton* v. *Colton*, 127 U. S. 309, 310.

''The testator is. presumed to have used words in their ordinary sense, unless it appears from the context that he used them in some other sense; or, unless by a reference to extrinsic circumstances, the use of the words in their ordinary sense would render the provision of the will inoperative or insensible (senseless). *Mowalt* v. *Carow*, 7 Paige, 328.'' *Puryear* v. *Edmondson*, 4 Heis., 51.

Reading the will before us in the light of the foregoing rules, and giving the language of the testatrix its primary and natural meaning (in the absence of anything requiring or justifying a different rendering thereof), the conclusion is forced upon our minds that she intended to make, and in fact and law did make, each child of her deceased brothers and sisters, Rob Roy Dyer, George Dyer, Kitty Hunt, and Margaret Robertson, living at the date of the will, an equal beneficiary with each and every other child

of her said deceased brothers and sisters, then living, in the *residuum* of her estate.

The beneficiaries are particularized as "the children" of certain deceased brothers and sisters, and individualized as "each one of said children," and, finally, it is declared, as a present, existing fact that "said children now reside in Louisiana." Thus, they are severally referred to as being in existence at the time the will is executed. The place of their then abode is mentioned by the use of a verb in the present tense, and an adverb denoting present time—"now reside."

It is true that the mere place of their residence is of no great moment in ascertaining the intention of the testatrix, being matter of description only (*Morse* v. *Mason*, 11 Allen, 36; *Smith* v. *Campbell*, 19 Ves., 400), but that their then residence somewhere was mentioned as an existing fact, as an actual, subsisting thing *in præsenti*, is a matter of controlling importance. It shows, beyond doubt, there being no conflicting or countervailing word or expression in the will, that all the particular nephews and nieces so designated were thought of and provided for as persons then living, and that each and every one of those particular nephews and nieces then living, was in the mind of the testatrix, and intended to be included in the benefaction given.

Jarman says: "It may be stated, as a general rule, that whenever a testator refers to an actually existing state of things, his language is referential to

the date of the will, and not to his death, as this is then a prospective event. Such, it is clear, is the construction of the word 'now,' or any expression pointing at present time.'' 1 Jarman, 591. See, also, to same effect, 1 Redfield, 370–380, and *Sharpe* v. *Allen*, 5 Lea, 81.

Jarman further says, in the same connection: ''On the same principle, verbs in the present tense have a similar effect in restricting a devise or bequest to the subjects or objects existing at the date of the will, though in some of the cases considerable reluctance appears to have been manifested to carry out this principle, where its effect would be inconveniently to narrow the scope of the will, by excluding any who might be presumed to be intended objects of the testator's bounty.'' 1 Jarman, 592.

The word ''now,'' as here used, manifestly relates to the date of the will, and, in connection with other parts of the item, fixes that as the time from which the number of original beneficiaries and shares are to be reckoned and ascertained. To deny it that office is, as we think, to blot it from the will altogether.

The gift, then, was to all the particular nephews and nieces living at that time, and it was to be shared by them equally, and without distinction, condition, or limitation. The purpose that it should be so received and shared is emphasized by the cumulative clause, ''it being my intention to give to each one of said children an equal portion of said residue.''

No room was left for fluctuation in the number of original beneficiaries. ''Each one of said chidren'' living at the date of the will took an equal, several, vested, and transmissible interest, and the aggregate number. of such interests was the same as the number of such children. The interest or share of any one of them who may have died between that time and the death of the testatrix, ''leaving issue'' alive at the latter date, passed to such surviving issue under the provisions of § 3036 of the Code by Milliken & Vertrees. *Dixon* v. *Cooper*, 88 Tenn., 177; *Darden* v. *Harrill*, 10 Lea, 422.

We have instituted no comparison, in this opinion, between the language of the will under consideration and that of any one of the wills · construed in our numerous adjudged cases, because there is, in no instance, sufficient similarity to render such comparison of any advantage in ascertaining the intention of the present testatrix.

It has been well observed that Courts ''are not much assisted'' in the construction of wills ''by a reference to cases, unless the will or the words used are very similar,'' and that, in the absence of such similarity, cases ''are more likely to mislead than to assist in coming to a correct conclusion.'' *Stewart* v. *Jones*, 5 Jur. N. S., 229 (S. C., 3 DeG. & J., 532, cited in Sec. 1074*f*, 2 Story's Eq.).

In the course of the opinion in *Smith* v. *Bell*, Chief Justice Marshall remarked: ''It has been said truly (3 Wils., 142) that cases on wills may guide

Jones *v.* Hunt.

us to general rules of construction; but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the Court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.'' 6 Peters, 80.

Again, it has been stated that ''there can be nothing more certain than that any will is to be construed by itself, not with reference to other wills.'' *Wait* v. *Littlewood*, 4 Mooks' Eng. R., 762, approved in *Fraker* v. *Fraker*, 6 Bax., 352, and in *Hottell* v. *Browder*, 13 Lea, 678.

Modify so as to admit appellants and others, if there be others, in like situation as representatives of their deceased parents respectively, and affirm otherwise.